# FORM   A

CIVIL RIGHTS COMPLAINT TO BE USED BY A *PRO SE* PRISONER
UNDER 42 U.S.C. § 1983 or
UNDER *BIVENS V. SIX UNKNOWN FED. NARCOTICS AGENTS*

Rev. 10/10

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY

FILED
JAMES J. VILT, JR. - CLERK

NOV - 2 2023

U.S. DISTRICT COURT
WEST'N. DIST. KENTUCKY

CHARLES SULLIVAN
_____

_____

_____

(Full name of the Plaintiff(s) in this action)

v.

WELLPATH, TEREASA WHITE,

SASHA GREY, COURTNEY FORGY,

STACY ALLEN, MISTY ASHLEY,

SHANE JOHNSTON, ABIGAYLE HISLOP,

DAWN PATTERSON, (SEE ATTACHMENT)

(Full name of the Defendant(s) in this action)

CIVIL ACTION NO. 3.23CV-569-JHM
(To be supplied by the clerk)

( x ) DEMAND FOR JURY TRIAL

(__) NO JURY TRIAL DEMAND
(Check only one)

## I.    PARTIES

(A) **Plaintiff(s)**. Place the full name of the Plaintiff in the first blank below, his/her place of confinement, address, and status. Repeat this procedure for each additional Plaintiff named, if any.

(1) Name of Plaintiff: Charles "Hank" Sullivan

Place of Confinement: Luther Luckett Correctional Complex (LLCC)

Address: PO BOX 6, La grange, KY 40031

Status of Plaintiff: CONVICTED ( x )  PRETRIAL DETAINEE (__)

(2) Name of Plaintiff: _____

Place of Confinement: _____

Address: _____

Status of Plaintiff: CONVICTED (___)   PRETRIAL DETAINEE (___)

(3)  Name of Plaintiff: _____

Place of Confinement: _____

Address: _____

Status of Plaintiff: CONVICTED (___)   PRETRIAL DETAINEE (___)

**(B) Defendant(s)**.  Place the full name of the Defendant in the first blank below, his/her official position title in the second blank, and his/her place of employment in the third blank. Mark the capacity in which the Defendant is being sued.  Repeat this procedure for each additional Defendant named, if any.

(1)  Defendant  Wellpath  is employed

as  Healthcare Provider  at  LLCC; KDOC  .

The Defendant is being sued in his/her ( x ) individual and/or ( x ) official capacity.

(2)  Defendant  Tereasa White  is employed

as  Nurse  at  Wellpath LLCC  .

The Defendant is being sued in his/her ( x ) individual and/or ( x ) official capacity.

(3)  Defendant  Sasha Grey  is employed

as  Nurse  at  Wellpath LLCC  .

The Defendant is being sued in his/her ( x ) individual and/or ( x ) official capacity.

(4)  Defendant  Courtney Forgy  is employed

as  Nurse  at  Wellpath LLCC  .

The Defendant is being sued in his/her ( x ) individual and/or ( x ) official capacity.

(5) Defendant ___(See Attachment)_____ is employed

as _____ at _____.

The Defendant is being sued in his/her (___) individual and/or (___) official capacity.

## II.     PREVIOUS LAWSUITS

(A) Have you begun other lawsuits in State or Federal court dealing with the <u>same facts</u> involved in this action?  YES (___) NO ( X )

(B) If your answer to "A" is YES, describe the lawsuit in the spaces below. If there is more than one lawsuit, you must describe the additional lawsuits on another sheet of paper, using the same outline.

Parties to the previous lawsuit:

Plaintiff(s):     _____

_____

Defendant(s):   _____

_____

Court (if federal court, name the district.  If state court, name the county):

_____

Docket number: _____

Name of judge to whom the case was assigned: _____

Type of case (for example, habeas corpus or civil rights action): _____

Disposition (for example, Was the case dismissed?  Is it still pending?  Is it on appeal?):

_____

Approximate date of filing lawsuit: _____

Approximate date of disposition: _____

3

## III.    STATEMENT OF CLAIM(S)

State here the FACTS of your case. State how you believe your constitutional rights were violated. Describe how each Defendant violated your rights. And set forth the dates on which each event took place. Do not make legal arguments or cite cases or statutes. However, identify the constitutional right(s) you allege was/were violated. If you intend to assert multiple claims, number and set forth each claim in separate paragraphs.

(See Attachment)

4

**III. STATEMENT OF CLAIM(S) continued**

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

## IV.   RELIEF

State exactly what you want the Court to do for you.  (If you seek relief which affects the fact or duration of your imprisonment (for example:  release from illegal detention, restoration of good time, expungement of records, release on parole), you must also file your claim under 28 U.S.C. §§ 2241, 2254 or 2255.)  The Plaintiff(s) want(s) the Court to:

__X__ award money damages in the amount of $260,000.00 _per Defendant_

__X__ grant injunctive relief by (See Attachment; paragraphs 105, 106)

__X__ award punitive damages in the amount of $2,600,000.00 _per Defendant_

__X__ other: Cost and any other relief deemed necessary

## V.   DECLARATION UNDER PENALTY OF PERJURY
### (each Plaintiff must sign for him/herself)

I, the undersigned, declare under penalty of perjury that the information contained in this document is true and correct.

This _1_ day of _November_ , 2023

_Hank Sullivan_
(Signature of Plaintiff)

_____
(Signature of additional Plaintiff)

_____
(Signature of additional Plaintiff)

I hereby certify that a copy of this complaint was delivered to the prisoner mail system for mailing on _1, November 2023_

_Hank Sullivan_
(Signature)

6

ATTACHMENTS

Form A

## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF KENTUCKY

CHARLES SULLVAN

   Plaintiff

V                                                            Civil Action No._____

WELLPATH, TEREASA WHITE, SASHA GREY,                        {X}Demand For Jury Trial
COURTNEY FORGY, STACY ALLEN, MISTY
ASHLEY, SHANE JOHNSTON, ABIGAYLE
HISLOP, KEVIN SMITH, DAWN PATTERSON,
DENNISE BURKETT, AMY ROBEY, COOKIE
CREWS, AND JANE DOE

   Defendants

## I PARTIES

### (B) Defendants

(5)  Defendant Stacy Allen is employed as Nurse at Wellpath, LLCC. The Defendant is being sued in her {X} individual and/or {X} official capacities.

(6)  Defendant Misty Ashley is employed as Nurse at Wellpath, LLCC.  The Defendant is being sued in her {X} individual and/or {X} official capacities.

(7)  Defendant Shane Johnston is employed as Health Services Administrator (Herein HSA) at Wellpath, LLCC.  The Defendant is being sued in his {X} individual and/or official capacities.

(8)  Defendant Abigayle Hislop is employed as Nurse at Wellpath, LLCC.  The Defendant is being sued in her{X} individual and/or {X} official capacities.

(9)   Defendant Dawn Patterson is employed as Manager at Wellpath, LLCC.  The Defendant is being sued in her {X} individual and/or {X} official capacities.

(10)   Defendant Dennise Burkett is employed as Healthcare Administrator at Wellpath, LLCC. The Defendant is being sued in her {X} individual and/or {X} official capacities.

(11)   Defendant Kevin Smith is employed as Doctor at Wellpath, LLCC.  The Defendant is being sued in his {X} individual and/or {X} official capacities.

(12)   Defendant Jane Doe is employed as Nurse at Wellpath, LLCC. The Defendant is being sued in her {X} individual and/or {X} official capacities.

(13)   Defendant Amy Robey is employed as Warden at LLCC.  The Defendant is being sued in her {X} individual and/or {X} official capacities.

(14)   Defendant Cookie Crews is employed as Commissioner of the Kentucky Department of Corrections (Herein KDOC).  The Defendant is being sued in her {X} individual and/or {X} official capacities.

## III  STATEMENT OF CLAIMS

### Prefatory Note

(1).   Patterns, practices, and policies (formal and informal) are in place by the KDOC and Wellpath to violate inmates Civil Rights by denying them meaningful medical treatment.  And.,

(2).   Such patterns, practices, and policies include, but are not limited to:  the deliberate indifference to inmates serious medical needs;  the denial of meaningful medical attention unless an inmates life is at risk;  refusing inmates emergency room and hospital transports;  the use of dilatory tactics, neglect, and abusive language to deny inmates medical treatment;  nurses practicing medicine outside their training, certification, and ability;  the denial of medication based on cost, especially for pain management;  and/or the use of barbaric medical practices.

(3).   These patterns, practices, and policies are oft in opposition to the orders of medical professionals and experts who have treated the inmates outside of the prison.

(4).  The Wellpath ran medical unit at Luther Luckett Correctional Complex (Herein LLCC) is a toxic environment for inmates; depriving them of meaningful healthcare to offset increased prison populations, staff shortages, and to reduce cost; all in violation of inmates 8Th Amendment Rights to the U.S. Constitution.

(5).  There is an odium for inmates at Wellpath, LLCC, especially in regard to Plaintiff Sullivan, whom has had many confrontations and difficulties with Wellpath staff since his transfer to LLCC.

(6).  Employees of the KDOC and Wellpath, LLCC are aware of these patterns, practices, and policies violating inmates' rights; practicing collusion along and across company lines, and do nothing about their application to inmates at LLCC.

(7).  KDOC policy allows Wellpath employees sole oversight for medical grievances in attempt to separate the KDOC from the violations of Wellpath employees to the rights of inmates but this does not excuse the KDOC's responsibility for their actions.

(8).  The Defendants in this suit are subjectively cognizant of their duties and responsibilities to Plaintiff, Charles Sullivan; cognizant of the patterns, practices, and policies, as stated above; and chose to ignore their duty and honor, doing nothing about the application of such to him., *acting under the color of State law.*

## Plaintiff

(9).  Plaintiff, Charles Sullivan, is an incarcerated prisoner, a ward of the State of Kentucky, in the care and custody of the KDOC.  He is currently confined at LLCC in La Grange, Kentucky.  Plaintiff is not a corporation.

## Defendants

(10).  Wellpath is the company employed by the KDOC to staff the medical units at its prison, especially LLCC.

(11).  Defendants, Tereasa White, Sasha Grey, Courtney Forgy, Stacy Allen, Misty Ashley, Shane Johnston, Abigayle Hislop, Dawn Patterson, Dennise Burkett, Kevin Smith, and Jane Doe, are all employed by Wellpath and at all times mentioned herein assigned to LLCC.

(12).   Defendant, Amy Robey, is the Warden of Operations at LLCC for the KDOC and at all times mentioned herein assigned to LLCC.

(13).   Defendant, Cookie Crews, is the Commissioner of the KDOC, is responsible for the KDOC, has the ability to change policy, and at all times mentioned herein assigned to Commissioner of the KDOC.

## Jurisdiction and Venue

(14).   This is a Civil Action authorized by 42 U.S.C. § 1983 to redress the deprivation under color of State Law, of Rights secured by the Constitution for the United States of America.  The Court has jurisdiction under 28 U.S.C. § 1331 and 1343(a)(3).  Plaintiff seeks declaratory relief pursuant to 28 U.S.C. § 2201 and 2202.  Plaintiff's claims for injunctive relief are authorized by 28 U.S.C. § 2283 and 2284 and Rule 65 of the Fed. R. Civ. P.   The United States District Court is an appropriate venue under 28 U.S.C. § 1391(b)(2) because it is where the events giving rise to this claim occurred.

## Statements

(15).   In support of this Civil Action against the named Defendants, the Plaintiff, Charles Sullivan, *pro se*, submits the following:

(16).   On Febuary 7th, 2023 Mr. Sullivan went to the Medical Unit at LLCC concerned over a large, painful, and swollen knot in his groin {PXA-LLCC Medical Records}.,

(17).   At this Sick-Call, Defendant, Tereasa White addressed his groin Complaint, and following the patterns, practices, and policies, as stated above, refused to send Mr. Sullivan to an outside medial facility to provide meaningful medical care for him; choosing instead to perform surgery herself which she was not qualified to perform.

(18).   Barbarically, Defendant White, refusing him antistesia, lanced open his groin and then used hemostats in an attempt to scrape the wound clean (a common practice at Wellpath, LLCC {PXB-Thompson Affidavit}); putting Mr. Sullivan's life at risk because she failed to conduct an ultrasound prior to surgery to determine the depth of the infection, failed to properly removed the infection from the wound, and exposed the infection to air making it grow rapidly.

(19).   When Nurse White lanced open the wound a large, odorous discharge of puss and infection shot out and when she finished surgery she refused to suture the wound close or to give/order Mr. Sullivan any pain medication; only placing a Band-Aid on the wound.

(20).   Mr. Sullivan left medical with an order for an oral antibiotic and, in extreme pain, returned to his cell to lie down.

(21).   His pain level continued to increase tremendously and his wound began to swell.  This continued until he was in more pain than he has ever been in in his life.

(22).   He had to wait until after the Noon Count to clear prior to returning to the Wellpath Medical Unit and when he arrived he was seen by Defendant, Sasha Grey.  He told her that something was terribly wrong with his groin; that he was in the more pain than he had ever known possible; and that he needed to be sent to a hospital.

(23).   Following the patterns, practices, and policies, as stated above, she would not even examine his groin, deliberately indifferent to his serious medical needs, told him to go and buy some Tylenol from the inmate canteen, and dismissed him from Medical with the admonition to, "go lie down" {PXC – Grievance 1}; refusing him aid, medication, or a hospital transport.

(24).   He argued with her that his was serious and she became vulgar, using abusive language, and threatened to have him locked up in segregation if he didn't leave Medical.

(25).   Mr. Sullivan returned to his cell and got into his bed in extreme pain and the swelling and pain began to spread into his testicle.

(26).   That evening, his groin and testicles were both the size of a softball and he showed them to his cell-mate, Mr. Maddox, who became so concerned that he went and informed the dorm officer, Officer Baker to come to their cell because Mr. Sullivan could no longer walk.

(27).   When Baker saw the state of Mr. Sullivan's groin and testicles he immediately called the Medical Unit and requested them to send the Medical Golf Cart to render aid.  Conforming to the patterns, practices, and policies, as stated above, Defendant, Stacy Allen, told Officer Baker to have him report to Sick-Call in the morning in deliberate indifference to his serious medical needs.  Had Mr. Sullivan done as she said he would have died!

(28).  Officer Baker obtained another inmates wheelchair, put him in it, and pushed him to the medical unit himself, saving Mr. Sullivan's life.

(29).  Upon arrival at Medical, for the third time that day, the nurse promptly called for him an ambulance now that his life was in danger.  Matters should not have progressed to this point had the Defendants not been following the patterns, practices, and policies, as stated above.

(30).  Mr. Sullivan was transported to Norton, Brownsboro Hospital and placed on an I.V. antibiotic, administered pain medication, and underwent surgery the following day for his groin.

(31).  The surgeon at the hospital informed him that what Nurse White did to him was barbaric.

(32).  He remained at the hospital, under their monitoring, to ensure he received meaningful care for his healing wound and on Febuary 15th, 2023 he was released from their care back to the prison. And.,

(33).  He had a pick-line in his arm because the medical experts at Norton knew he had a risk of reinfection and wanted to be able to administer medicine immediately should such occur. And.,

(34).  Prior to the hospital releasing him, staff at the hospital called Defendant White to ensure the medications Mr. Sullivan needed were already on site at the prison.  Nurse White told them that they had received all of the medication they wanted him to take but was lying about it.  Some of his medications were refused to him and/or their orders were never filled {PXA}. And.,

(35).  She did this in conformation to the patterns, practices, and policy, as stated above. And.,

(36).  He filed a grievance, GN 23 – 122 {PXC} which dealt with the defendant's violations in these affairs and Defendant, Shane Johnson defended the offending Defendants behavior, going so far as to state that, "medications prescribed by outside providers are given to our providers and they prescribe what is necessary and within policy."  It is the policy of Wellpath to deny inmates medicine in attempt to offset cost.  Frankly, Mr. Sullivan's medications cost too much and costly medication is against Wellpath policy.

(37).  Defendants, Ashly Misty, Courtney Forgy, Abigayle Hislop, and Jane Doe, all refused to properly perform wound care on Mr. Sullivan when he returned, conforming to the patterns, practices, and policies, as stated above, in deliberate indifference to his serious medical needs.  In less than one week his groin was infected again. And.,

(38).  He made many pleas to these wound care nurses for them to properly care for his injury but they talked abusively to him and were negligent.  He demanded to be sent to the hospital and these nurses refused him to do such, only notifying Defendant White to come and inspect his groin once they had allowed the infection to return.

(39).  Defendant White informed him that she would not give him any care for his groin until she had an ultrasound confirming it was in fact infected again in spite of the wound being red and swollen, him running a fever and having an upset stomach, and being in intense pain.  She used dilatory tactics in conformation to the patterns, practices, and policies, mentioned above, to be deliberately indifferent to his serious medical needs.

(40).  It is a common dilatory tactic of the staff at Wellpath, LLCC to deny inmates time sensitive medical aid, in violation of their 8th Amendment Rights, through the use of "scheduling appointments", if any appointments even exist, thus delaying their presentation to hospitals.  In a mirroring case that includes some of the same Defendants as in the case are Bar, *Huffman v. Williams, Civil Action 3:21-cv-00217-JHM* in the Western Dist. of Kentucky, an inmate at the same prison was force by Wellpath staff to wait while the Scheduling Department tried to make him an appointment with the U of L School of Dentistry OMFS Unit for his extensive facial trauma; including multiple broken bones, despite the fact that these surgeons only consult with patients in the E.R. because of the seriousness of such injuries.  Huffman was made to wait 110 days after his injury to be sent to the E.R. even though he made numerous attempts to get the medical staff to help him.    Further evidencing the patterns, practices, and policies in place at Wellpath, Mr. Sullivan offers the Prison Legal News article outlining the lawsuit of the family members of a deceased inmate {PXD – Prison Legal News}.  This article testifies to the patterns, practices, and policies of Wellpath to deny inmates medical attention, Mr. Sullivan included.  The case at Bar is not an isolated event.  The article, outlining the suit, *Marc A. Moreno v. Correctional Healthcare, PLN Companies, Case No. 4:41-cv-05171-RMP.,* speaks on Wellpath having a $1.3-billion-dollar revenue in 2019, being sued 1395 times since 203, and noted to be involved in 70 death suits at the time of publication in 2021.  Had prisoners had better advocates Mr. Sullivan believes the number of suit would be many times larger.

(41).  Mr. Sullivan made numerous attempts to get help from the wound care nurses and Defendant Johnston and White, but they were deliberately indifferent to his serious medical needs, telling him that they would not send him back to the hospital without first getting an ultrasound of his groin to make sure the infection had returned.

(42).   He was forced to wait in pain and at risk to his life until Febuary 28th, 2023 when he was brought to the Medical Unit in a wheelchair, unable to walk again, and seen by Defendant Stacy Allen. She noted in her report that his groin was the size of a softball and had a mild odor {PXA}. Defendant Johnston and White were brought to Mr. Sullivan and they told him that they were waiting on the appointment for his ultrasound and could do nothing for him until then. Mr. Sullivan then threated to take his own life if they did not get him medical attention immediately because he was dying. After such threat, Defendant Johnston got on the phone and called the ultrasound tech to come and give him an ultrasound with her arriving fifteen minutes after the call.

(43).   It is a violation of his Rights to make him wait ten days in pain and at threat to his life for an appointment that took one phone call to obtain, especially since he had just returned from the hospital for a life threatening infection. The ultrasound confirmed the infection had, indeed, returned, but was not necessary as a lay person could tell it was infected badly.

(44).   The ten days he was forced to wait were intentional, and meant to kill him; evil; and malicious.

(45).   Upon information and belief, Defendant Johnston's statement in his reply to grievance, GN 23 – 122 [PXC] that the ultrasound tech was already on her way when he called is a lie.

(46).   Upon information and belief, it was not necessary for him to first undergo an ultrasound prior to being sent to the hospital but Defendants Johnston, White, Misty, Forgy, Hislop, and Doe did so to conform to the patterns, practices, and policies, as stated above.

(47).   Any reasonable person will see that such patterns, practices, and policies, especially the use of dilatory tactics to deny Mr. Sullivan medical treatment, is a violation of his Civil Rights and is evil and malicious.

(48).   Nurse Johnston and White had Nurse Ashly clean his wounds prior to sending him out to the hospital to make it appear as if they had been taking proper care of his wound.

(49).   At Norton for the second time, Sullivan received very similar treatment as his first trip except for having to have an additional procedure due to a complication with inserting an I.V. in his arm that resulted in his loss of a vein. Had the wound care nurses, above, performed proper wound care he would not have had to return to the hospital in the first place and wound never have lost they vein.

(50).   Defendant Kevin Smith is the doctor for Wellpath at LLCC whom the nurses practice medicine under.  As the doctor, he is cognizant of Mr. Sullivan's condition as he is in contact with the Wellpath nurses, especially when requests for onsite surgery, hospitalizations, ultrasounds, medications, and any other form of communications and requests have to go through him for approval.  He was responsible for Mr. Sullivan as his doctor.  He was aware and cognizant of his serious medical needs, ordering and acquiescing in his subordinates denying him meaningful medical treatment; use of dilatory tactics to deny him timely transport to a hospital; allowing untrained nurses to perform surgery; all of which he did to conform to Wellpath's patterns, practices, and policies, as stated above, to reduce costs by denying him medical treatment.  Dr. Smith had oversight over the nurse who practice medicine under him.

(51).   When Mr. Sullivan returned from the hospital the first time filed a grievance in relation to the violations of the staff at Wellpath, LLCC [PXC].  On Febuary 21st, 2023, Defendant Shane Johnston, HSA for Wellpath, conducted the informal resolution for this grievance, in which he condoned the barbaric practices and denial of medical aid to Mr. Sullivan which almost killed him.  He went as far in his response to claim that the medicine prescribed by the Doctors at Norton, vital to his recovery, were not necessary and within the policy of Wellpath [PXC].

(52).   Defendant Johnston gives responses on all of his informal resolutions that state nothing wrong was done by those whom the grievance names because he is aware of the patterns, practices, and policies, as stated above, and does so to allow the despicable behavior of his subordinate's.  This allows: their behavior to evade review for their Civil Rights violations; the perpetuation of such violations against the Plaintiff and other inmates; denies the correction of such violations; all in order to be cruel and unusually punish him and other inmates as well as to save money.

(53).   Upon information and belief, HSA Johnston was covering for his subordinates and help them to evade review for their behavior.

(54).   Defendant Johnston has oversight over the Defendants who practice medicine under his care.

(55).   Upon information and belief, had HSA Johnston held the nurses accountable for their violations then Mr. Sullivan's wound care would have been performed properly and he could have avoided the undue pain and suffering he experienced when his wound once more got infected.  Further,

had he not promoted the patterns, practices, and policies, as stated above, the violations to him would never have occurred.

(56).   HSA Johnston ordered and acquiesced in his offending subordinate's application of the patterns, practices, and policies, as stated above, in violation to Mr. Sullivan's Civil Rights and also did nothing about their application to him; intentionally indifferent to his serious medical needs and the violation of his Rights.  Johnston was aware of the offending subordinate's actions and had oversight of their behavior, their violations, and did nothing to prevent such.

(57).   Defendant Johnston and White had oversight over Mr. Sullivan being refused the medication Norton doctors ordered him.

(58).   Not satisfied with the informal resolution to his grievance, GN 23 – 122 [PXC], he then appealed such to Defendant Dawn Patterson, who, on March 2nd, 2023 found, "the healthcare grievance committee has reviewed your complaint and medical records.  Concur with the informal resolution," which is a boilerplate answer given by her on all of the grievance she responds to.

(59).   Defendant Patterson is aware of the violations to Mr. Sullivan's Civil Rights and has oversight of the offending employees whom work under her management; she has ordered and acquiesced in the application of the patterns, practices, and policies, as stated above, to him; and/or done nothing about these violations and applications.

(60).   Upon information and belief, Defendant Patterson gives the same response on all grievance because she is aware of the patterns, practices, and policies, as stated above, and does so to help the despicable behavior allowing: their behavior to evade review for their Civil Rights violations; the perpetuation of such violations against the Plaintiff and other inmates; denial of the correction of such violations; all in order to be cruel and unusually punish him and other inmates as well as to save money.

(61).   Upon information and belief, by Defendant Patterson's actions to allow these violations to evade review and correction she has acquiesced in the offending behavior of her subordinates, in regard to Mr. Sullivan and other inmates, whom she is the regional manager of; not correcting the despicable patterns, practices, and policies, as stated above, from being applied to him; and by not doing so she allows the perpetuation of violations to inmates Civil Rights.

(62).   Upon information and belief, had Defendant Patterson held her subordinates accountable for their actions then Mr. Sullivan would never have had to suffer any violations to his Civil Rights in the

first place. She has created an environment that perpetually violates inmates right with IMPUNITY and must be held accountable. She has oversight of the subordinates whom she is Manager of.

(63). Mr. Sullivan appealed her decision of the grievance to Medical Director, Defendant Dennise Burkett, who concurred with Defendant Patterson, typical of a Wellpath employee. And.,

(64). Defendant Burkett concurs to all previous responses to grievance she answers. And.,

(65). Upon information and belief, Defendant Burkett is aware of the violations to Mr. Sullivan's Civil rights; has oversight of her subordinate's behavior; and has ordered and acquiesced in the application of the patterns, practices, and policies, as stated above, to Mr. Sullivan and has done nothing about these violations and/or the application of the patterns, practices, and policies to him.

(66). Upon information and belief, Defendant Burkett concurs on all grievances with the previous response she answers because she is aware of the patterns, practices, and policies, as stated above, and does nothing about such, allowing: Civil Rights violations to evade review; the perpetuation of such violations against inmates; all done in order to be cruel and unusually punish inmates in an attempt to save money.

(67). Upon information and belief, by Defendant Burkett's actions to allow these violations to evade review and corrections, she has acquiesced with the offending behavior of her staff, whom she is the Medical Director of; not curing the despicable patterns, practices, and policies, as stated above, from being applied to Mr. Sullivan.

(68). Upon information and belief, had Defendant Burkett held her subordinates accountable for their actions then Mr. Sullivan would never have had to suffer any violations to his Civil Rights in the first place. She has created an environment that perpetually violates inmates right with IMPUNITY and must be held accountable. She has oversight of the subordinates whom she is Healthcare Administrator of.

(69). On March 24th, 2023, after issues with the grievance coordinator at LLCC, Mr. Sullivan was allowed to file a grievance over the Defendants violations of his Civil Rights upon returning from the hospital the first time, including the failure to properly clean his wound by the wound care nurses, defendant Johnston and White's insistence on an ultrasound prior to transporting him back to Norton's, and the wound getting infected again. [PXE - Grievance #2], And.,

(70).  Defendant Johnston, Patterson, and then Burkett all responded in similar fashion as in the previous grievance; with no favorable ruling for him; thus continuing the evasion of review, the corrections of the violations to Civil Rights; cessation of the patterns, practices, and policies, as stated above, from being applied to him and other inmates, all of which is in an effort to be cruel, unusually punish inmates, and to save money thought the application of such.

(71).  Through the course of these events, Defendant, Kevin Smith, was the doctor for Wellpath at LLCC whom all of the nurses practice medicine under.  As the doctor, he was cognizant of Mr. Sullivan's condition; especially when requests for in-house surgery, hospitalization's, ultrasounds, and medications came before him.  He was aware of and promoted the patterns, practices, and policies, as stated above, and did nothing about their application to the Plaintiff.  He was responsible for Mr. Sullivan as his doctor and he was aware and cognizant of his serious medical needs, ordering and acquiescing in his subordinate's refusal of his meaningful medical aid; use of dilatory tactics; use of untrained nurses to perform surgery; barbaric practices to deny antistesia and pain medicine; all of which he did to comply with the patterns, practices, and policy, as stated above, to reduce costs by the denial of Mr. Sullivan's medical needs and other inmates.

(72).  Defendants Amy Robey and Cookie Crews were aware of the patterns, practices, and policies, as stated above, of the staff at Wellpath, LLCC in regard to the denial of medical care; and did nothing to prevent their application to Mr. Sullivan. And.,

(73).  Amy Robey and Cookie Crews promoted the despicable customs, patterns, practices, and policies, as evidenced herein, and ordered and acquiesced in their subordinates use of such to deny Mr. Sullivan his safety, security, and meaningful medical needs.  [See PxF-Letter].

(74).  KDOC and Wellpath promote despicable patterns, practices, and policies, as stated above, ordering and acquiescing in its subordinates use of such to deny Mr. Sullivan his safety, security, and meaningful medical needs.

(75).  Amy Robey and Cookie Crews both did so while acting under color of state law.

(76).  When Mr. Sullivan was sentenced he was remanded to the care and custody of the KDOC, as a ward of the State of Kentucky. And.,

(77).  The KDOC is charged with the duty to protect Plaintiff Sullivan because of his severely weakened state created by the conditions of confinement. And.,

(78).  Inmates are the greatest financial interest of the KDOC. And.,

(79).  The duty imposed on the KDOC to care for a ward of State, i.e. Mr. Sullivan, who the KDOC is under the charge of the State of Kentucky, include safe housing and protection. *Further,*

All defendants represent the KDOC through extensions of their employment.  All Defendant's owe protection and care to ward of State, Charles Sullivan.

(80).  All defendants have a duty to act and they neglected it when the acted or failed to act, as described herein. And.,

(81).  Defendant Amy Robey and Cookie Crews have a duty of care owed to the KDOC, State of Kentucky, and to Mr. Sullivan, who is under the charge of their principle, KDOC, and they neglected it. And.,

(82).  Amy Robey and Cookie Crews both have the ability to change policy. And.,

(83).  Upon information and belief, all Defendants have conspired to deprive Mr. Sullivan of his Civil Rights.  And.,

(84).  Any reasonable person will see that Defendants Wellpath, White, Grey, Forgy, Allen, Ashley, Johnston, Hislop, Patterson, Burkett, Smith, and Doe's actions, inactions, and/or neglect, as evidenced herein, is an abuse of authority under color of State Law and is evil and on purpose and is evident of the patterns, practices, and policies exercised by the Defendants.

(85).  Any reasonable person will see that Defendant Robey and Crew's action, inaction, and/or neglect, as evidenced herein, when made aware of Mr. Sullivan's Civil Rights violations, abuse, and treatment, is an abuse of authority under color of State Law, and is evil and on purpose and is evidenced of the patterns, practices, and policies exercised by these Defendants.

(86).  Defendant Robey and Crews have failed to protect the Plaintiff.

(87).  Any reasonable person will see that All of the Defendants actions, inactions, and/or neglect, as evidence herein, in regard to the patterns, practices, and policies, is collusion, depriving him of Sullivan of his Civil Rights and Liberty; is abuse of authority under color of State Law, and is EVIL and on purpose and is evident of all the Defendants patterns, practices, and policies.

(88).  Mr. Sullivan can never recover the lost benefits denied him by the Defendants.

(89).   He is still having complications due to these violations; confined to a wheelchair and having blood clots at the time of this drafting with a very weakened immune system; and he can be expected to continue to have complications resultant from these violations.   He knows his own body and he and his family members will attest that the injuries have changed him and he cannot maintain a "normal" life for the duration of his natural lifetime as a result of the violations, lack of treatment, abuse of authority, and corrupt cooperate practices and policies inflicted upon him by the Defendants.

(90).   The physical and mental injuries as well as the injuries to his Civil Rights are permanent and still evade review.  And.,

(91).   The actions, inactions, and neglect of the Defendants have left Mr. Sullivan with irreparable damages.  And.,

(92).   The evil actions, inactions, and neglect herein against him are capable of repetition. And.,

(93).   He is not an attorney and must rely upon the court to liberally construe his complaint and proceedings. And.,

(93).   The amount in controversy exceeds $75,000.00 excluding interest and cost. 28 U.S.C. § 1332(a).

## Exhaustion of Legal Remedies

(94).   Plaintiff, Charles Sullivan filed grievance GN 23 – 122 [PXC] and GN 23 – 175 [PXE] both in connection to these Civil Rights violations and both have been exhausted with no favorable outcome to him.

## Legal Claims

(95).   Plaintiff, Charles Sullivan, re-alleges and incorporates, by reference, paragraphs 1 – 94, above.  All conditions precedent were performed and/or occurred.

(96).   The conduct and misconduct of All the Defendant's, as evidenced herein, has injured him irreparably; including, but not limited to, depriving him of his Rights and Liberties, all while the Defendants were abusing their authority under color of State Law, which includes, but is not limited to, the following:

(97).   Defendants White, Grey, Forgy, Allen, Ashley, Johnston, Hislop, Patterson, Burkett, Smith, and Doe, through their actions, inactions, and neglect of duty, as evidenced herein, violated Mr. Sullivan's Rights and constitutes: (1) Denial of meaningful medical needs; (2) Unnecessary and wanton infliction of pain and suffering resultant from:

a. barbaric practices performed by untrained nurses,

14

     b. placing his life in danger to adhere to patterns, practices, and policies, as stated above,

     c.  physical damage to his body,

     d.  mental anguish,

     e.  ongoing complications due to his continued deteriorated health conditions

     f.  untreated trauma,

     g.  undue pain and suffering and the lack of pain treatment and ordered medicines,

     h.  current and imminent injures for the rest of his life,

; and (3) Deliberate indifference to his serious medical needs, violations of his 8th and 14th Amendment Rights to the U.S. Constitution.

(98).   Defendant Johnston, Smith, Patterson, Burkett, Robey, and Crews engaged in unconstitutional conduct and acquiesced in the unconstitutional conduct of their offending subordinates when they became aware of the plaintiff's serious medical needs and  ignored them; engaged in and supervised the use of dilatory tactics to deny his needs; promulgated, ordered, and/or enforced the patterns, practices, and policies, as stated above, to deny his medical needs, which all resulted in deliberate indifference to his serious medical needs; violations of his 8th and 14th amendment Rights to the U.S. Constitution., Also, they failed to protect him,

(99).   Defendants Johnston, Patterson, and Burkett's involvement with the grievances pertaining to this suit have resulted in violations of Mr. Sullivan's 8th and 14th Amendments to the U.S. Constitution and allows for the continued violation of untold other inmates because they have failed to correct the offending violations of their subordinates, failed to protect h im, and must be held accountable for this cruel and unusual punishment.

(100).   Mr. Sullivan has no plain, adequate, or complete remedy at law to redress the wrongs described herein.  He will continue to be, and has been, injured irreparably by all of the Defendants conduct unless this Honorable Court GRANTS the declarative, injunctive, and other relief he seeks.  No judgement or order can ever remedy completely the injuries to him or to his Civil Rights.

(101).   All conditions precedent were performed or occurred.


Prayer for Relief

**WHEREFORE:**  Plaintiff, Charles Sullivan, respectfully prays this Honorable Court enters judgement granting him:

(101).   A declaration that the acts and omissions described herein violated the Plaintiff's rights under the U.S. Constitution and laws of the United States;

(102).   Compensatory damages for a nominal 50 percent of the total lost income Plaintiff must endure from his release date in May of 2024 until his retirement age of 69 in 2052, as a result of his

permanent injuries, in the amount of $5,000.00 per year for a total of $160,000.00 against each Defendant, jointly and severally.;

(102).  Compensatory damages sufficient to treat plaintiff's injuries medically for the rest of his natural life, an/or similar narrowly drawn order to ensure treatment of his injuries;

(103).  Compensatory damages to ease and aid the physical and mental pains and suffering the Plaintiff in the amount of $100,000.00 against each Defendant, jointly and severally;

(104).  Punitive damages in the amount of $2,600,000.00 against each Defendant, jointly and severally;

(105).  A preliminary and injunctive order preventing KDOC and Wellpath from the further use of despicable tactics, patterns, practices, and policy to deny inmates their medical needs and violating Civil Rights and/or a similar narrowly drawn order having the same effect;

(106).  A preliminary and injunctive order preventing Wellpath nurses from practicing surgery in barbaric fashion, as evidenced herein, and/or a similar narrowly drawn order having the same effect;

(107).  Plaintiff's costs in this suit.

(108).  A jury trial on all issues triable by jury;

(109).  Any additional relief this Court deems just, proper and equitable.


This Complaint has been executed by Charles Sullivan at LaGrange, Kentucky on this day, the __1__ Of _November_ , 2023.


Respectfully submitted,

All rights reserved without prejudice,


Charles Sullivan – Plaintiff, *pro se*

#202269

c/o LLCC PO BOX 6

La Grange, Kentucky 40031

16

Verification

I have read the foregoing complaint and hereby verify that the matters alleged therein to be true except to those matters alleged on information and belief, and, as to those, I believe them to be true. I verify, under penalty of perjury, that the foregoing is true and correct and that I am over the age of 21. I am not a cooperation. Executed at La Grange, Kentucky on the __1__ day of _November_, 2023

Charles Sullivan #202269

PO BOX 6

LaGrange KY 40031

Notice and Certificate of Service

This is to give notice and certify that the foregoing complaint with attachments has been filed using the prison legal mailbox rule and sent to: Clerk, US District Court, 601 West Broadway, Rm 106, Louisville Kentucky 40202 vial postage prepaid First-class U.S. Mail on this the __1__ day of _November_ ,2023. I declare under penalty of perjury that the foregoing is true and correct.

Charles Sullivan – Plaintiff, *pro se*

#202269

c/o LLCC PO BOX 6

La Grange, Kentucky 40031

17